O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| STEVEN COMPLETO et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>RICHMAN PROPERTY SERVICES, INC. et al.,<br><br>　　　　　　Defendants. | Case № 2:24-cv-04233-ODW (SSCx)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND [16]; DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [18]; AND DENYING PLAINTIFFS' MOTION TO AMEND [36]** |

## I.　INTRODUCTION

On April 26, 2024, Plaintiffs Steven Completo, Adriana Guillen, Guozhi Cheng, Loushen Zhang, Byron Cook, Destinee Ramirez, Josefina Montemayor, Alan Morse, Darlean Jones, Brittany Rasp, Gregory Rasp, Enric Morera, Nadir Elias, and Walter Rountree initiated this action against Defendants Richman Property Services, Inc. ("Richman") and DOES 1 through 10 for violation of California's Investigative Consumer Reporting Agencies Act ("ICRAA") in the Superior Court of California. (Notice Removal ("NOR") Ex. A ("Complaint" or "Compl."), ECF Nos. 1, 1-1.) On May 21, 2024, Richman removed this action to federal court based on alleged diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (NOR ¶ 12.) Plaintiffs now move to remand. (Mot. Remand ("Motion" or "Mot."), ECF No. 16.) For the reasons

below, the Court **GRANTS** Plainitffs' Motion and **REMANDS** this action to Los Angeles County Superior Court.[1]

## II.    BACKGROUND

At some point during 2023 and 2024, each Plaintiff completed and submitted a rental application ("Application") to apply for an apartment unit in buildings operated by Richman. (Compl. ¶¶ 20, 26.) The Application notified applicants that Richman may screen for criminal background and previous evictions. (*Id.* ¶ 28.) Richman did not provide a process for Plaintiffs to indicate that they wished to receive a copy of any report prepared in connection with their respective Applications, and it did not provide Plaintiffs with "a consent form or disclosure with a box to check" in connection with such reports. (*Id.* ¶ 34.) Richman later processed each Plaintiff's Application and requested investigate consumer reports about each Plaintiff, obtaining at least two such reports about each Plaintiff. (*Id.* ¶¶ 31, 33.) Richman did not provide Plaintiffs a copy of any such reports. (*Id.* ¶ 35.) Plaintiffs are all residents of apartment buildings Richman operates. (*See* Decl. Theresa Eastwood Davis ISO Opp'n Mot. ("Davis Decl.") ¶¶ 8–21, ECF No. 20-1.)

On April 26, 2024, Plaintiffs filed this lawsuit against Richman in the Superior Court of the State of California, County of Los Angeles. (Compl.) In their Complaint, Plaintiffs assert three causes of action: (1) violation of the ICRAA; (2) invasion of privacy; and (3) a judicial declaration that each Plaintiff's Application and annual re-certification violate the ICRAA and are "therefore illegal and wholly void." (*Id.* ¶¶ 38–60.) As relief, Plaintiffs request (1) general, compensatory, and punitive damages; (2) statutory damages in the amount of $20,000 per Plaintiff; (3) interest; (4) attorneys' fees; (5) equitable relief and restitution; (6) declaratory judgment that each Plaintiff's Application and annual re-certification violates the ICRAA; (6) an injunction enjoining Richman from violating the ICRAA or refusing to

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

rent to Plaintiffs; and (7) a writ of mandate and injunction requiring Richman to, among other things, comply with the ICRAA by including in its rental application an option for prospective applicants to receive a copy of any investigate consumer report and, if requested, providing the reports themselves. (*Id.*, Prayer.)

Richman removed this action to federal court, alleging diversity jurisdiction under 28 U.S.C. § 1332(a). (NOR ¶ 12.) Plaintiffs now move to remand this action back to Los Angeles County Superior Court. (Mot.) The Motion is fully briefed. (Opp'n Mot. ("Opp'n" or "Opposition"), ECF No. 20; Reply ISO Mot. ("Reply"), ECF No. 23; Obj. Reply, ECF No. 24.)[2] Richman also moves for judgment on the pleadings. (Mot. J. Pleadings, ECF No. 18; Opp'n Mot. J. Pleadings, ECF No. 21; Reply Mot. J. Pleadings, ECF No. 22.) And Plaintiffs move to amend their Complaint. (Mot. Am. Compl., ECF No. 36; Notice Non-Opp'n, ECF No. 38.)

### III.   LEGAL STANDARD

Federal courts are courts of limited jurisdiction and possess only that jurisdiction as authorized by the Constitution and federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under 28 U.S.C. § 1441(a), a party may remove a civil action brought in a state court to a district court only if the plaintiff could have originally filed the action in federal court. Federal district courts have original jurisdiction where an action arises under federal law, or where each plaintiff's citizenship is diverse from each defendant's citizenship (i.e., diversity is "complete"), and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a).

There is a strong presumption that a court is without jurisdiction until affirmatively proven otherwise. *Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1190 (9th Cir. 1970); *see Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal

---

[2] Defendant asks the Court to strike Plaintiffs' untimely Reply, which Plaintiffs filed three days after the deadline. (Obj. Reply 3.) The Court rejects this request. In any event, this would not alter the Court's ruling.

in the first instance."). When an action is removed from state court, the removing party bears the burden of demonstrating that removal is proper. *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017). Removal is strictly construed, and any doubt as to removal is to be resolved in favor of remand. *Id.*

### IV.  DISCUSSION

Plaintiffs seek to remand the case to state court, asserting that the amount in controversy does not exceed $75,000. (Mot. 6–7.)³ The Court addresses each of the five categories of damages that Richman asserts contribute to an amount in controversy exceeding $75,000: (1) statutory damages; (2) attorneys' fees; (3) declaratory relief; (4) injunctive relief; and (5) other damages. (*See* Opp'n 12–19.)

**A.  Statutory Damages**

The ICRAA, requires, among other things, any person requesting an "investigative consumer report" to "[p]rovide the consumer a means by which the consumer may indicate on a written form, by means of a box to check, that the consumer wishes to receive a copy" of such report. Cal. Civ. Code § 1786.16(b). The ICRAA provides for a minimum of $10,000 in damages for violations of the statute. *Id.* § 1786.50(a)(1). Because Plaintiffs ask for $20,000 in statutory damages for each of the fourteen Plaintiffs, (Compl., Prayer ¶ 3), Richman asserts that damages must be aggregated and the amount in controversy is $280,000, (Opp'n 18–19).

"[A]s a general rule, multiple plaintiffs who assert 'separate and distinct' claims in a lawsuit may not aggregate their claims to satisfy the jurisdictional amount." *Bockrath v. Apartment Inv. & Mgmt. Co.*, No. 2:20-cv-04179-CJC (PJWx), 2020 WL 3469265, at *2 (C.D. Cal. June 25, 2020); *see Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013) ("The traditional rule is that multiple plaintiffs who assert separate and distinct claims are precluded from aggregating them to satisfy

---

³ Plaintiffs also assert that Richman waived its ability to remove this case to federal court. (*See* Mot. 7–8.) Because Richman does not meet its burden to show an amount in controversy that exceeds $75,000, the Court does not address this issue. For the same reason, the Court does not rule on Richman's evidentiary objections. (*See* Mem. Evid. Objs., ECF No. 20-19.)

the amount in controversy requirement."). This anti-aggregation principal "applies to *any* civil case," including representative suits, not just class actions. *Jaimes v. Am. First Fin. LLC*, No. 23-cv-00978-SK, 2023 WL 6783774, at *2 (N.D. Cal. Oct. 12, 2023) (collecting cases) (quoting *Phipps v. Praxair, Inc.*, No. 99-CV-1848 TW (LAB), 1999 WL 1095331, at *5 (S.D Cal. Nov. 12, 1999)).

In *Snyder v. Harris*, the Supreme Court stated that "[a]ggregation has been permitted only" in two circumstances: "(1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." 394 U.S. 332, 335 (1969). To determine the second exception's character of interest, "courts look to the source of plaintiffs' claims. If the claims are derived from rights that they hold in group status, then the claims are common and undivided. If not, the claims are separate and distinct." *Urbino*, 726 F.3d at 1122 (internal quotation marks omitted). "But simply because claims may have questions of fact and law common to the group does not mean they have a common and undivided interest." *Id.* (internal quotation marks omitted).

In their Complaint, Plaintiffs assert they are pursuing this action "acting for themselves and also as . . . private attorney general[s] seeking to redress wrongs and protect the rights of other building tenants so that the continuing illegal practices in violation of the Civil Code permanently cease." (Compl. ¶ 5.) Richman relies on this assertion to argue that damages should be aggregated. (Opp'n 18–19.)

However, Plaintiffs also allege that "each" Plaintiff is "entitled to statutory damages" in connection with Defendant obtaining "investigat[iv]e consumer reports about *each* of the Plaintiffs." (Compl. ¶¶ 45–46 (emphasis added).) Thus, while Plaintiffs may be seeking injunctive relief on behalf of others, the monetary relief Plaintiffs seek—$10,000 per report per Plaintiff—are separate and distinct claims for each Plaintiff.

Richman asserts that Plaintiffs' purported strategy to file multiple suits with fewer plaintiffs instead of one suit with all plaintiffs "demonstrates an understanding that the claims will be aggregated." (Opp'n 19 n.7.) Even if true, at most, this demonstrates Plaintiffs' view of the law, not the state of the law. Moreover, the fact that multiple consumers have filed separate lawsuits, and each has alleged violations in connection with each consumer's respective reports, supports that these claims are distinct and not undivided. *See, e.g.*, *Calloway v. Richman Prop. Servs., Inc.*, No. 2:24-cv-04232-ODW (SSCx) (seven plaintiffs); *Harville v. Richman Prop. Servs., Inc.*, No. 2:24-cv-07832-ODW (SSCx) (two plaintiffs); *Alvarado v. Richman Prop. Servs., Inc.*, No. 8:24-cv-02008-ODW (SSCx) (two plaintiffs); *Ruffins v. Richman Prop. Servs., Inc.*, No. 2:24-cv-08288-ODW (SSCx) (two plaintiffs); *Lee v. Richman Prop. Servs., Inc.*, No. 2:24-cv-08286-ODW (SSCx) (two plaintiffs); *Murph v. Richman Prop. Servs., Inc.*, No. 2:24-cv-08545-AB (MAAx) (two plaintiffs).

Richman also fails to cite even one case that supports aggregation here. (*See* Opp'n 8, 19.) Therefore, Richman fails to meet its burden to show that Plaintiffs' claims should be aggregated. Because each Plaintiff seeks $10,000 of statutory damages per investigative consumer report, and each Plaintiff alleges that Defendant "obtained at least two" such reports per Plaintiff, (Compl. ¶ 46), Plaintiffs' claim for statutory damages supports only $20,000 amount in controversy.[4]

**B.    Attorneys' Fees**

Under the ICCRA, a plaintiff may recover "the costs of the action together with reasonable attorney's fees as determined by the court." Cal. Civ. Code § 1786.50(a)(2). The Ninth Circuit has held that attorneys' fees awarded under fee-shifting statutes can be considered in assessing the jurisdictional threshold. *Gonzales v. CarMax Auto*

---

[4] That Plaintiffs made a purported "typographical error" in the Complaint asking for $20,000 per Plaintiff instead of $10,000, (Mot. 6 n.1), and that they have sought to amend their Complaint to redress this error, (Mot. Amend Compl.), does not change this analysis: courts analyze whether jurisdiction exists at the time of removal. *Strotek Corp. v. Air Transp. Ass'n. of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002).

*Superstores, LLC*, 840 F.3d 644, 649 (9th Cir. 2016). However, "a removing defendant" must "prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence," and must "make this showing with summary-judgment-type evidence." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018). As such, a "district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof." *Id.* Although a defendant can "meet its burden to establish a reasonable estimate of attorneys' fees by identifying awards in other cases, those cases must be similar enough to the case at hand that the court can conclude that it is more likely than not that the plaintiff may incur a similar fee award." *Kaplan v. BMW of N. Am., LLC*, No. 21-cv-857 TWR (AGS), 2021 WL 4352340, at *6 (S.D. Cal. Sept. 24, 2021).

Here, Richman fails to meet its burden with respect to attorneys' fees. Richman fails to cite any case where a court awarded a high amount of attorneys' fees. (*See generally* NOR; Opp'n.) Instead, Richman cites *Elmi v. Related Mgmt. Co., L.P.*, No. G061379, 2023 WL 6210756 (Cal. Ct. App. Sept. 25, 2023), as an example of an ICRAA case where a plaintiff sought more than $300,000 in attorneys' fees. (*See* Opp'n 14 n.4.) There, the appellate court did not award $300,000 in attorneys' fees, but instead affirmed the trial court's $19,440 award. *Elmi*, 2023 WL 6210756, at 1, 4.

Richman also submitted a declaration from one of its attorneys stating that "[s]ignificant fees have been incurred so far" and "based on [his] experience, it is unlikely this case will settle quickly." (Decl. Benjamin E. Strauss ¶ 2, ECF No. 20-18.) This is not enough for Richman to meet its burden. In fact, attorneys' fees may be less here than the typical case because Plaintiffs' counsel is representing numerous Plaintiffs in nearly identical cases against Richman where the parties have

filed nearly identical motions.[5]  This duplication of work would more likely than not lead to a reduced attorneys' fees award on a per-Plaintiff basis.

Because the removal statute is strictly construed, and all doubts are resolved in favor of remand, the Court finds that Richman fails to submit adequate evidence substantiating any attorneys' fees.  Accordingly, the Court does not consider attorneys' fees in its amount in controversy calculation.

**C.    Injunctive Relief**

Richman asserts that the cost of Plaintiffs' requested injunctive relief "would be significant," because it would require it to "overhaul" the "entire application and leasing processes for all 19 buildings that it operates in California." (Opp'n 16.)  In a declaration, Richman's president states that she "cannot yet determine the cost of the requested injunction," but provides "one data point for assessing the vast cost"—Richman's leasing and application software contract costs more than $42,000 per year. (Davis Decl. ¶ 4.)  Richman's president also asserts that Richman will "need to create training materials and deliver training to over 40 California employees on these new systems." (*Id.*)

These assertions do not support an amount in controversy for compliance with injunctive relief.  First, Richman does not clarify how the cost of its leasing and application software relates to the costs that would be incurred to comply with a hypothetical injunction requiring changes to its rental applications.  Second, Richman fails to explain why such compliance would require training for its employees or what "these new systems" entail.  In its motion for judgment on the pleadings, Richman characterizes its purported violation as "allegedly omitting a checkbox." (Mot. J.

---

[5] *See, e.g.*, Mot. Remand, *Calloway v. Richman Prop. Servs.*, No. 2:24-cv-04232-ODW (SSCx), ECF No. 20; Mot. Remand, *Harville v. Richman Prop. Servs., Inc.*, No. 2:24-cv-07832-ODW (SSCx), ECF No. 25; Mot. Remand, *Alvarado v. Richman Prop. Servs., Inc.*, No. 8:24-cv-02008-ODW (SSCx), ECF No. 19; Mot. Dismiss, *Ruffins v. Richman Prop. Servs., Inc.*, No. 2:24-cv-08288-ODW (SSCx), ECF No. 9; Mot. Dismiss, *Lee v. Richman Prop. Servs., Inc.*, No. 2:24-cv-08286-ODW (SSCx), ECF No. 11; Mot. Dismiss, *Murph v. Richman Prop. Servs., Inc.*, No. 2:24-cv-08545-AB (MAAx), ECF No. 10.

Pleadings 21.) The evidence submitted in support of its Opposition does not suggest that adding a simple "checkbox" to its rental application would cost Richman significant sums of money. Even if it did, Richman provides no basis for the Court to determine what that amount should be for purposes of the jurisdictional analysis.

### D. Declaratory Relief

Richman contends that the cost of complying with Plaintiffs' requested declaratory relief satisfies the amount in controversy. (*See* Opp'n 15, 17–18.) "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Corral*, 878 F.3d at 775; *accord Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). The "object of the litigation" in this case is a declaration that rental applications and annual re-certifications are void. (*See* Compl. ¶ 59, Prayer ¶¶ 7–8). Richman asserts that declaratory relief, in conjunction with equitable relief and restitution, could cost it at least between $10,236 and $38,430 per Plaintiff (the rent due throughout each Plaintiff's lease). (Opp'n 17; *see* Davis Decl. ¶¶ 8–21.) The Court cannot credit this amount because the rental *agreements* are not the "object of the litigation."

Plaintiffs seek a declaration that their "Rental Application and the annual re-certification . . . violate the ICRAA." (Compl., Prayer ¶ 8.) Separately in the Complaint—but not the Prayer for Relief—Plaintiffs seek a declaration that these applications "are illegal and wholly void." (Compl. ¶ 59.) Even crediting this requested relief, nowhere in the Complaint do Plaintiffs request a declaration that their rental agreements are void. (*See generally* Compl.) Richman has not shown how voiding the rental applications, but not the rental agreements, would cost it any money or lead to voidance of the rental agreements themselves.

For the same reasons, the Court cannot credit Richman's speculative claim that voiding the rental agreements for units "supplemented by tax credits and other financial benefits provided by the State of California and [the] federal government . . . . would cause a chain reaction resulting in millions of dollars in harm

1  to Defendant." (Opp'n 7–8.) Moreover, the amount in controversy "is determined by the amount involved in the particular case, and not by any contingent loss either one of the parties may sustain by the probative effect of the judgment." *New England Mortg. Sec. Co. v. Gay*, 145 U.S. 123, 130 (1892); *see WBI, Inc. v. Zurich Am. Ins. Co.*, No. 15-cv-04852-MWF (AFMx), 2016 WL 4528956, at *3 (C.D. Cal. Aug. 30, 2016) ("[W]hatever the collateral effects a decree or judgment might have . . . on the rights or interests of the parties to this action or third parties, these effects cannot be taken into account in calculating the amount in controversy. (internal quotation marks omitted))." Even if voiding certain rental agreements could possibly lead to Richman losing tax credits, Plaintiffs do not request this relief and it is therefore not the "object of the litigation."

### E.  Other Damages

Lastly, Richman references the alleged punitive damages. (Opp'n 7–9, 14, 18.) Richman's bare assertion that the Court should consider these damages "provides the Court with no factual or legal basis by which to determine the likelihood" of such an award in this case. *Banuelos v. Colonial Life & Acc. Ins. Co.*, No. 2:11-cv-08955-JHN (AGRx), 2011 WL 6106518, at *2 (C.D. Cal. Dec. 8, 2011); *Dressler v. Hartford Fin. Servs. Grp., Inc.*, No. 2:14-cv-02134-MMM (MANx), 2014 WL 12560796, at *7 (C.D. Cal. June 19, 2014) ("The mere fact that a plaintiff seeks punitive damages, however, is not sufficient, standing alone, to establish that the amount in controversy exceeds the jurisdictional threshold."). Therefore, inclusion of these damages "in the amount in controversy would be improper." *Hulse v. Bethesda Lutheran Cmtys., Inc.*, No. 5:18-cv-00262-FMO (KKx), 2018 WL 1033223, at *3 (C.D. Cal. Feb. 23, 2018). For the same reasons, the Court cannot consider the other purported monetary damages, including compensatory, general, emotional distress damages, and invasion of privacy damages. (*See* Opp'n 7, 14.)

Therefore, for purposes of the jurisdictional analysis, Richman has proven $20,000 in controversy. Even assuming some amount in controversy for attorneys'

fees, injunctive and declaratory relief, and other damages, the amount in controversy is well below the $75,000 threshold required for diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Remand, (ECF No. 16), and **REMANDS** this case to the Superior Court of California, County of Los Angeles, 111 North Hill Street, Los Angeles, CA 90012, Case No. 24STCV10516. Consequently, the Court **DENIES** Richman's Motion for Judgment on the Pleading, (ECF No. 18), and Plaintiffs' Motion to Amend the Complaint, (ECF No. 36), as moot.

**IT IS SO ORDERED.**

October 15, 2024

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**